# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 19, 2010

## CELSO VILORIO MELENDEZ, a/k/a EDWIN CANALES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2004-B-1260      Monte Watkins, Judge**

**No. M2009-01489-CCA-R3-PC - Filed February 2, 2011**

The Petitioner, Celso Vilorio Melendez, aka Edwin Canales, appeals as of right the Davidson County Criminal Court's denial of his petition for post-conviction relief. The Petitioner alleges that his guilty pleas to two counts of facilitation to deliver over 300 grams of cocaine, a Class B felony, was not voluntarily, knowingly and understandingly made due to the ineffective assistance of counsel. Specifically, he contends that trial counsel did not advise him of the eligibility requirements for participation in the Department of Correction's (DOC) Boot Camp Program, and that, had he been properly advised, he would not have pleaded guilty. After the appointment of counsel and a full evidentiary hearing, the post-conviction court found that the Petitioner failed to prove his allegations by clear and convincing evidence and denied the petition. Following our review, we conclude that trial counsel rendered deficient representation when he incorrectly advised the Petitioner that he was eligible for the boot camp program. We reverse the judgment of the post-conviction court and remand for a determination regarding whether that deficiency was prejudicial to the Petitioner.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Remanded**

DAVID H. WELLES, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

John E. Herbison, Nashville, Tennessee, for the appellant, Celso Viloria Melendez, a/k/a Edwin Canales.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

This case arises from the Petitioner's involvement in a conspiracy to deliver large amounts of cocaine from Texas to Nashville. On May 7, 2004, a Davidson County grand jury returned a forty-five count indictment charging the participants of this conspiracy. The Petitioner was indicted in twenty-one counts; the charges included conspiracy to deliver over 300 grams of cocaine, conspiracy to sell over 300 grams of cocaine in a school zone, conspiracy to commit money laundering, money laundering, possession with intent to deliver over 300 grams of cocaine, delivery of over 300 grams of cocaine, delivery of over 300 pounds of marijuana, conspiracy to deliver over 70 pounds of marijuana in a school zone, attempted delivery of over 300 grams of cocaine, and criminal forfeiture.

Pursuant to the terms of his plea agreement, in exchange for his guilty pleas to two counts of facilitation to deliver over 300 grams of cocaine (amended charge for Counts 1 and 16), a Class B felony, see Tennessee Code Annotated sections 39-11-403, -17-417, the remaining nineteen charges were dismissed. Furthermore, the Petitioner was sentenced to two consecutive terms of twelve years as a mitigated offender, release eligible after service of 20% of his sentence.

At the August 25, 2005 guilty plea hearing, the State provided the facts supporting the Petitioner's plea:

> [T]his stems from a wiretap investigation conducted by the Twentieth Judicial District Drug Task Force. During the investigation officers learned that [the Petitioner] was ordering a large amount of cocaine from co-defendant Rene Ruiz. Mr. Ruiz was having the kilograms delivered to [the Petitioner] here in Nashville, Davidson County. The testimony would be that Mr. [Ruiz] and [the Petitioner] met on several occasions; and, also, made numerous telephone calls to broker those cocaine deals.
>
> [The Petitioner] also arranged for the multiple kilograms of cocaine to be distributed to several people in Davidson County, including Nathan Phillips and Louis Chavez. Ms. Maria Melendez and Jose Molina, who are also co-defendants . . . , provided a safe house at 919 Goodbar Drive here in Davidson County. And that was a safe house for marijuana, cocaine, and drug proceeds.

On January 11th of 2004 [co-defendants] Hector Villegrand, . . . and Elden Roberto Reyes, who at that time was known as Victor Flores, used a tractor-trailer to deliver forty kilograms of cocaine to 1200 Vultee Boulevard here in Davidson County. At that time Carlos Flores, [S]antos Melendez, and others, including [the Petitioner], arrived at the Vultee Boulevard address. The cocaine was then placed into personal vehicles and driven to 919 Goodbar Drive here in Davidson County.

Officers executed a search warrant at 919 Goodbar. They did find twenty kilograms of cocaine in the attic, money in the attic, another twenty kilograms of cocaine that had been moved from the residence to Nathan Phillip's truck; and, found nearly half a million dollars on a bed in the bedroom of the residence.

The January 11th delivery was one of several cocaine deliveries that officers were able to track to Davidson County, that were coming to Davidson County at the direction of [the Petitioner].

During the hearing, the trial court spoke with the Petitioner regarding his trial rights, and the Petitioner responded appropriately to questioning. The Petitioner affirmed that he had been able to communicate with trial counsel and that he was satisfied with his representation. The Petitioner also confirmed that he had not been forced or coerced into pleading guilty and that he had not been promised anything in exchange for his plea. When asked if he had any questions for the court, the Petitioner responded, "No." He acknowledged his signature on the petition and stated he signed the petition freely and voluntarily.

The Petitioner filed a petition for post-conviction relief on June 20, 2006. Counsel was appointed for the Petitioner, and an amended petition was filed. In his amended petition, the Petitioner asserted that he received the ineffective assistance of counsel: (1) due to trial counsel's failure to accurately advise the Petitioner about his eligibility for the boot camp program; (2) due to trial counsel's failure to explain the consecutive nature of the Petitioner's sentences; (3) due to trial counsel's failure to litigate "meritorious issues," including the warrantless search of the residence, suppression of the Petitioner's statements, and deficiencies in the affidavit supporting the arrest warrant; and (4) due to trial counsel's failure to challenge the admissibility of the taped telephone conversations obtained via wiretap. A hearing was held on November 20, 2008, at which the Petitioner and trial counsel were the only witnesses.

The Petitioner testified that he was aware that, if his guilty plea was set aside, he faced substantially more time in prison under the numerous charges in the original indictment. When asked why he still wanted to withdraw his plea, the Petitioner answered, "Because I believe that the law is not based on lies or deceit."

The Petitioner's native language was Spanish, but he did speak some English. The Petitioner was from El Salvador and had an eighth grade education. According to the Petitioner, there was not an interpreter present at his guilty plea hearing, and he did not know he was entitled to have one present. The Petitioner did not believe that, at the time of his plea, his English skills allowed him to adequately communicate with trial counsel. Prior to his arrest in another state and being brought to Nashville, the Petitioner had no prior dealings with the criminal justice system in Tennessee.

When asked about other plea offers made by the State before the one he ultimately accepted, the Petitioner stated that the first offer was nineteen years at 30% and that the second one was sixteen years likewise at 30%. The Petitioner acknowledged that his release eligibility date under the sixteen-year sentence would be the same as under the sentence he accepted. The Petitioner also confirmed that the sixteen-year offer would have required him to plead guilty to a Class A felony and, therefore, he accepted the twenty-four-year offer, pleading to Class B felonies, in order to be eligible to attend boot camp.[1] The Petitioner stated that eligibility for the boot camp program was a very important concern to him, elaborating, "If it weren't for that I wouldn't have accepted it." The Petitioner claimed that he was told he would have the "same time," that no one told him "the twenty-four years was going to end up being a lot more time. Because what the parole [board] looks at are the two sentences. If I had known, I would have accepted the sixteen-year sentence without any argument."

The Petitioner testified that trial counsel did not explain eligibility requirements for boot camp to him, particularly the provision that gave higher priority to inmates between the ages of seventeen and twenty-five to enter the program. The Petitioner acknowledged that he was thirty years old at the time he entered his plea. After applying for boot camp once in prison, the Petitioner was told it was "impossible," receiving the following explanation: "In the first place I was older. Second time I had a long time, a long sentence. And third place, I had no possibility because of the amount of drugs in the case." The Petitioner testified that, if trial counsel had discussed the factors affecting his eligibility for, or likelihood of his going to, boot camp, then he would not have accepted the plea offer and would have insisted on going to trial. He reiterated that the reason he accepted the longer, twenty-four-year sentence

---

[1] Tennessee DOC's special alternative incarceration unit, commonly referred to as "boot camp." See Tenn. Code Ann. §§ 40-20-201 to - 207.

rather than the shorter, sixteen-year sentence was because he "was going to go to boot camp." Furthermore, the Petitioner stated that trial counsel did not explain how the parole system worked and that he did not understand what release eligibility meant.

When asked if he had any other concerns with trial counsel's representation, the Petitioner replied, "I think that [trial counsel] was trying to do the best for me. I think he also made the same mistake that I made" by "[n]ot investigating everything about the plea bargain." The Petitioner confirmed that he had a good rapport with trial counsel and that he trusted his judgment.

Upon questioning by the trial court, the Petitioner testified that he had been before the parole board one time. According to the Petitioner, the parole board said to him that he "had to fulfill one complete twelve-year sentence and then start on the other one, flatten it." When asked when would he next go before the parole board, the Petitioner responded, "The last time they gave me six years and told me I would not be able to come back until 2012."

On cross-examination, the Petitioner confirmed that he had reviewed the English transcript of his guilty plea hearing and that he remembered the proceedings. He stated that he conversed with trial counsel in both English and Spanish, and while there was confusion at times, the Petitioner was not troubled by their communication. The Petitioner confirmed that he was reviewed for parole in 2006, approximately six or seven months after his transfer to the DOC.

When asked if he mentioned anything about boot camp to the trial judge, the Petitioner answered, "I don't think anybody had the opportunity to talk on that day." The Petitioner did not recall the trial judge asking him whether he had been promised anything in exchange for his plea or whether he had any questions for the court. The Petitioner understood that, if he was convicted of all the original charges in the indictment, he could spend the rest of his life in prison.

Trial counsel then testified he was retained to represent the Petitioner after the preliminary hearing. Trial counsel testified that he obtained discovery in the Petitioner's case and familiarized himself with the allegations against the Petitioner. Trial counsel, who spoke Spanish, although not perfectly, met with the Petitioner, and they were able to communicate effectively:

My Spanish is not as good as his Spanish, and his English is probably not as good as my English, but between the two we would get through things. Sometimes there were like confusion about what words meant and things of

that nature, but we were able to converse and we had no problems communicating I didn't think.

Trial counsel opined that, given the amount of drugs involved and the fact some of the actions occurred in a school zone, the Petitioner faced a substantial amount of time in jail if convicted. According to trial counsel, the district attorney general did not make an offer at first "because she wasn't sure what she wanted to do with it for [the Petitioner]." Eventually, the prosecutor made an offer of twenty-six years at 30%, and that offer did not change for a long time. The offer was rejected, and trial counsel prepared for trial. Trial counsel later went and spoke with the prosecutor and "gave her some light to the case that she hadn't had before," and the prosecutor returned with an offer of nineteen years. Trial counsel did not recall there ever being a sixteen-year offer.

Trial counsel still did not like the nineteen-year offer: "That's an A felony. He won't even have a chance to go to boot camp. He won't be eligible for any programs and depending on his immigration status it might end up being he spends a lot more time in jail." Thereafter, trial counsel reviewed his "charge and guidelines" and formulated the twenty-four-year offer (two consecutive twelve-year terms) as a 20% mitigated offender. Reluctantly, the prosecutor agreed to the deal.

Trial counsel confirmed that there was no factual basis for the Petitioner being a mitigated offender, it was simply a benefit of the proposed plea agreement. Trial counsel testified that he then conveyed the offer to the Petitioner and approximated a parole eligibility date for him; he calculated that the Petitioner would be release eligible after service of 4.8 years. The Petitioner had approximately two years of jail credit at the time of his plea and sentencing. Trial counsel said that he never promised the Petitioner that he would be released the first time he went before the parole board.

Trial counsel testified that he discussed boot camp with the prosecutor but, while she would not oppose the Petitioner's participation in the program, she also would not recommend him for the program. According to trial counsel, boot camp participation was not a quid pro quo part of the plea agreement. Per his discussions with the prosecutor, trial counsel did not discuss boot camp with the trial judge so the prosecutor would not have to formally oppose it, thereby, protecting the Petitioner's eligibility for boot camp. Trial counsel said that he never promised the Petitioner that he would be admitted to the boot camp program and that he never told the Petitioner he could withdraw his plea if he was not accepted into boot camp.

Trial counsel did not recall the Petitioner at the guilty plea hearing ever not wanting to enter a plea or ever not being able to answer questions appropriately. Trial counsel also

recalled that an interpreter was present for the plea hearing[2] and believed that the Petitioner understood what was going on during the proceedings. The Petitioner did ask trial counsel one question during the hearing, but trial counsel believed they resolved the matter.

On cross-examination, trial counsel was asked to detail what information he told the Petitioner about boot camp:

> I told him that there's programs available. I don't—I think I explained what boot camp was. . . . I think I did tell him the program takes a few months to complete. I said, "When you first go"—usually what I say is, "When you first go to M.T.X., they—there is a sorting out process that they assign, kind of, where you are." I said, "because there is no weapons involved in this case, and you don't have a prior record," things of that nature—I said, "you should be eligible"—the facilitation to deliver over a certain quantity—I think it was over three hundred grams. I told him that that could actually get him out sooner, his release eligibility date, if he qualified for the program.

When asked if eligibility for boot camp was important during plea negotiations, trial counsel responded, "I wanted him to get the B so he would have the opportunity to have it, but [the prosecutor] wasn't going to give a recommendation." According to trial counsel, maintaining potential eligibility for boot camp was an important factor to both he and the Petitioner. Trial counsel testified that he was not aware of the statutory preference for persons seventeen to twenty-five years of age, but he did know the older a defendant was "the harder it [was] to get in." Furthermore, trial counsel did not look up the boot camp statute during the plea process and did not advise the Petitioner that persons under the age of twenty-five have a better likelihood of being admitted into the program.

Trial counsel did not discuss the effects of accepting the longer, aggregate consecutive sentence, as opposed to the Class A felony sentence offer. Trial counsel agreed that it was unusual for someone to make parole upon their first application, especially with a long sentence. When asked if he told the Petitioner "that twenty percent was just a starting point and that parole may well not be granted at the first opportunity," trial counsel replied that "I don't think I said it in that context." The Petitioner informed trial counsel that he was upset when he was put off for parole consideration until 2012.

---

[2] At the conclusion of the hearing, it was noted that the transcript of the plea hearing clearly stated the proceedings were conducted with the aid of an interpreter.

After hearing the evidence presented, the post-conviction court entered an order denying the petition on May 26, 2009. The post-conviction court ruled that the Petitioner had not satisfied his burden that trial counsel was ineffective, reasoning as follows:

> A close review of the record and testimony presented, reveals that the trial counsel testified [he] met with the [Petitioner] on several occasions and informed him of the nature of the charges against him, the likelihood of conviction and range of punishment for the forty-five (45) count indictment. Also, trial counsel testified that he received approximately three plea offers which were each discussed with the [P]etitioner. Additionally, trial counsel stated that there were discussions regarding the possibility of the [P]etitioner participating in boot camp. However, there was no promise of boot camp only that the State of Tennessee would not oppose but the ultimate decision is governed by the Tennessee Department of Correction[].

This appeal followed.

## ANALYSIS

On appeal, the Petitioner claims that he received the ineffective assistance of counsel because his attorney did not properly investigate whether he would be able to serve his sentences in boot camp, which rendered his guilty pleas unknowing and involuntary. To sustain a petition for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not reweigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The post-conviction judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer and actual prejudice to the defense caused by the deficient performance. Id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Id. "However, a trial court's conclusions of law—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id. (emphasis in original).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently

made. Hill v. Lockhart, 474 U.S. at 56 (citing North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164 (1970)).

When a guilty plea is entered, a defendant waives certain constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses. Boykin v. Alabama, 395 U.S. 238, 243 (1969). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Id. at 242. Thus, in order to pass constitutional muster, a guilty plea must be voluntarily, understandingly, and intelligently entered. See id. at 243 n.5; Brady v. United States, 397 U.S. 742, 747 n.4 (1970). To ensure that a guilty plea is so entered, a trial court must "canvass[] the matter with the accused to make sure he [or she] has a full understanding of what the plea connotes and of its consequence[s]." Boykin, 395 U.S. at 244. The waiver of constitutional rights will not be presumed from a silent record. Id. at 243.

In State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), the Tennessee Supreme Court set forth the procedure for trial courts to follow in Tennessee when accepting guilty pleas. Id. at 341. Prior to accepting a guilty plea, the trial court must address the defendant personally in open court, inform the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. See id.; Tenn. R. Crim. P. 11. A verbatim record of the guilty plea proceedings must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." Mackey, 553 S.W.2d at 341.

When the petitioner's claim is one of inadequate advice, courts generally distinguish between failure to inform of direct and indirect consequences of a guilty plea. Failure by counsel to inform of direct consequences of a guilty plea may constitute ineffective assistance of counsel. On the other hand, failure to inform of indirect consequences of a guilty plea normally does not. Adkins v. State, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994). This distinction "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. (quoting Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1988)).

In this case, the Petitioner's claim is one of inadequate advice. The Petitioner claims that he would not have pleaded guilty if had been accurately apprised that inmates between the ages of seventeen and twenty-five were given higher priority to enter the boot camp program. See Tenn. Code Ann. § 40-20-203. While he is correct about this statutory preference, the Petitioner, under thirty-five years of age, was still eligible for the program.

-10-

See Tenn. Code Ann. § 40-20-203. Both the Petitioner and trial counsel testified that the Petitioner understood that his placement in the boot camp program was not guaranteed and that he knew the final decision was vested with the DOC. This claim alone would not support a finding of deficient performance.

However, apparently, all parties believed that boot camp was available to the Petitioner. The prosecutor agreed to a plea to two Class B felonies in order to allow the Petitioner's possible participation in the program if approved by the DOC, and the post-conviction court's findings are based on the premise that the Petitioner was eligible for the program. However, the statute regarding boot camp eligibility requirements for drug offenders is clear:

> Notwithstanding the six (6) year or less sentence limitation of this part, an especially mitigated offender, as defined by § 40-35-109, or a standard offender, as defined by § 40-35-105, who is convicted of a violation of § 39-17-417(a) with respect to a controlled substance in an amount less than that set out in § 39-17-417(i), is eligible for placement in the special alternative incarceration unit as defined and authorized by this part.

Tenn. Code Ann. § 40-20-207. The Petitioner, convicted of facilitation of delivery of over 300 grams of cocaine, did not qualify. See Tenn. Code Ann. § 39-17-417(i) (when the two statutes are read in conjunction, to be eligible for the boot camp program, the amount of cocaine must be less than twenty-six grams). Trial counsel's advice to the Petitioner that he was eligible *at all* for participation in the program was directly contrary to the statute, and we must conclude that trial counsel rendered deficient performance when he gave the Petitioner incorrect advice. See Dwane Washington v. State, No. M2008-01062-CCA-R3-PC, 2009 WL 1676058, at *8 (Tenn. Crim. App., Nashville, June 16, 2009).

However, in order to obtain relief, the Petitioner must also prove that he was prejudiced by the deficient performance. See Strickland, 466 U.S. at 687. We are unable to determine from the record whether the deficiency was prejudicial to the Petitioner. Trial counsel testified that the Petitioner understood that his placement in the boot camp program was not guaranteed. Trial counsel also said that boot camp participation was not a quid pro quo part of the agreement. The Petitioner apparently accepted that he would have no recourse if the DOC decided not to place him in boot camp. If convicted as charged in the original indictment, the Petitioner faced exposure to a lengthy incarceration, potentially for the rest of his life.

Nonetheless, trial counsel confirmed that boot camp was important to him and the Petitioner in fashioning a plea agreement. At the post-conviction hearing, the Petitioner

relayed that, if he had been told about the eligibility requirements for boot camp, then he would not have entered his plea and would have proceeded to trial. He specifically stated that he accepted the twenty-four-year sentence because he "was going to go to boot camp." The Petitioner testified that he was aware if the original indictment was re-instated, then he faced substantially more time, but he wanted to withdraw his plea anyway.

The Petitioner also alleged that trial counsel did not adequately inform him about his parole eligibility and how the parole system worked. He claims that, if the parole system would have been properly explained to him, then he would not have accepted the longer, twenty-four-year sentence but would have taken the sixteen-year offer. However, the post-conviction court did not find the Petitioner credible. Trial counsel testified that there was never a sixteen-year offer, only a nineteen-year offer at 30%. Trial counsel also did not like the nineteen-year offer, explaining, "That's an A felony. He won't even have a chance to go to boot camp. He won't be eligible for any programs and depending on his immigration status it might end up being he spends a lot more time in jail." While the aggregate sentence was longer (twenty-four years), the Petitioner was release eligible sooner under the accepted plea, 4.8 years versus 5.7 years under the nineteen-year offer. Trial counsel testified that he never promised the Petitioner that he would be released the first time he went before the parole board.

Notwithstanding, the Petitioner's plea to two Class B felonies was accepted largely in part because the Petitioner believed he would be eligible for participation in the boot camp program and, as we have previously stated, this belief was incorrect. This was not just a failure to advise about eligibility requirements for boot camp, but incorrect advice from trial counsel that the Petitioner was *even* eligible for boot camp. While the post-conviction court did find the Petitioner not to be credible, this finding was based on its apparent assumption that the Petitioner was eligible for boot camp. The post-conviction court did not make determinations in its findings, specifically with regard to whether the Petitioner, given the amount of time he was ultimately facing if he proceeded to trial, would have proceeded to trial if he was correctly informed that he was not eligible for boot camp. See Washington, 2009 WL 1676058 at *9. We are unable to discern from the record to what degree "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. at 59. We must remand for further findings.

### CONCLUSION

Based upon the foregoing, we conclude that the post-conviction court erred by determining that Petitioner received the effective assistance of counsel. After a review of the record, we conclude that trial counsel's incorrect advice that the Petitioner was eligible for participation in the boot camp program amounted to deficient performance. Accordingly, the judgment of the Davidson County Criminal Court is reversed. Upon remand, the post-conviction court shall determine whether this deficiency was prejudicial to the Petitioner.

_____
DAVID H. WELLES, JUDGE